IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LESLIE LLOYD MOSS, PRO SE, § | | |
| also known as § | | |
| LESLIE L. MOSS, § | | |
| TDCJ-CID No. 896113, § | | |
| § | | |
| Plaintiff, § | 2:09-CV-0110 | |
| § | | |
| v. § | | |
| § | | |
| JEFFREY A. BROWN, ET AL. § | | |
| § | | |
| Defendants. § | | |

## REPORT AND RECOMMENDATION

Defendants, JEFFREY A. BROWN and JOE PONDER, have filed a motion for summary judgment in this *pro se* prisoner civil rights action pursuant to Title 42, United States Code, section 1983. In his complaint, plaintiff MOSS alleges that BROWN and PONDER, who are corrections officers employed by the Texas Department of Criminal Justice Clements Unit in Amarillo, Texas, subjected him to excessive force during an attempt to place plaintiff on property restriction and confiscate his property. Plaintiff claims Officer BROWN applied excessive force by twisting and snapping plaintiff's finger, causing it to break. Plaintiff claims defendant Sgt. PONDER failed to ensure the minimum amount of force necessary was used and neglected to intervene and protect him from Officer BROWN's use of excessive force.

Plaintiff requests an award of compensatory and punitive damages, as well as costs of suit.

**PROCEDURAL STANCE OF THE CASE**

Plaintiff originally filed suit against five defendants. His claims against all defendants were summarily dismissed on January 8, 2010, pursuant to Title 28 United States Code, section 1915(e)(2). *See Moss v. Brown*, No. 2:09-CV-110-J, 2010 WL 92431(N.D. Tex. Jan. 8, 2010), *rev'd in part on other grounds,* 409 F. App'x 732 (5th Cir. 2010). Plaintiff appealed and on December 15, 2010, the Fifth Circuit Court of Appeals affirmed in part and vacated in part, and remanded. The portions of the case which were vacated in part were the claims against defendants BROWN and PONDER.

The law of the case does not bar defendant BROWN's and defendant PONDER's motion for summary judgment because the dismissal as to those two defendants was vacated prior to answer, *i.e.*, at the PLRA screening stage. In remanding, the Fifth Circuit found that the District Court's finding that nothing in the record indicated Officer BROWN acted differently than the other officers or was not acting pursuant to legitimate commands was premature. The Fifth Circuit further held that while further factual development may show MOSS' allegations to be without merit, at this early stage of the proceedings dismissal was error and MOSS' allegations were not facially frivolous.

Consequently, the Court has again analyzed MOSS' claims and has now analyzed the summary judgment evidence produced by the parties, which summary judgment evidence was not previously before the Court.

The summary judgment evidence produced by defendants includes the sworn statements (affidavits) of defendants BROWN and PONDER. The affidavit by defendant PONDER indicates that, on the operative date of January 24, 2008, plaintiff MOSS was to be placed on a

property restriction, that he (MOSS) had taken control of his cell door food tray slot, and that a seven man response team had been authorized to deal with the situation.

When officers arrived at MOSS' cell, defendant PONDER observed MOSS had his face covered in a towel and a blanket wrapped around his body, and had blocked the ventilation in an attempt to defeat the potential use of chemical agents.  Verbal intervention was attempted, and even though plaintiff MOSS was advised chemical agents would be used if he did not comply, plaintiff MOSS refused to comply.  Chemical agents were ordered to be administered and the food tray slot was opened in an attempt to administer the agents.  As the tray slot was opened, plaintiff MOSS put his arm and hand wrapped in a blanket out of the tray slot to block access to it.  Three officers were ordered to move plaintiff's arm, including Officer BROWN.  Defendant PONDER gave multiple orders for plaintiff MOSS to remove his arm from the slot, but he refused to do so and struggled the entire time to keep control of the tray slot.  There was no indication that plaintiff MOSS' arm or hand were injured until officers were able to move plaintiff's arm enough to administer agents and step back away from the cell at which time plaintiff MOSS' arm and hand were visible and MOSS began to shake his hand indicating for the first time he might be in pain. Defendant PONDER concludes by stating that he ordered the three officers to move MOSS' hand and arm to allow application of chemical agents, that these acts were done to prevent the use of greater force, *i.e.*, the entry of a seven man response team into the cell, and that all of this was done in an attempt to resume normal prison operations. Defendant PONDER concludes that plaintiff MOSS was struggling the entire time the force was used and that from his (PONDER's) viewpoint, defendant BROWN's use of force was obscured from his vantage point.

Defendant BROWN, in his statement, repeats many of the observations made by defendant PONDER. Defendant BROWN further states that as the food tray slot was opened, plaintiff MOSS put his arm and hand, wrapped in a blanket, out of the tray slot blocking it completely. Defendant BROWN advises he attempted to move MOSS' arm by placing one hand on MOSS' hand and one hand on MOSS' forearm and pushing, but that it was very difficult to know what he was grabbing since plaintiff's arm and hand were covered by the blanket. Defendant BROWN further states that it took considerable effort to dislodge MOSS' hand and allow room to apply chemical agents. Defendant BROWN then states that he did not intentionally act to injure plaintiff MOSS, but that he acted pursuant to orders to move MOSS' hand and arm to allow for the application of chemical agents. BROWN states that plaintiff MOSS was struggling the entire time, that he (BROWN) was in physical contact with him, and that the amount of force BROWN used to dislodge his hand was necessary to allow another officer to apply chemical agents. The statements by defendants PONDER and BROWN are corroborated by additional summary judgment evidence, *i.e.*, the statement by a third officer, Officer Victor Ruiz. Ruiz specifically states that he was the closest person to defendant BROWN's use of force and that from his (Ruiz's) vantage point, the amount of force used was necessary to dislodge plaintiff MOSS' hand and allow room for application of the chemical agents. Ruiz further states that during the use of force he had no indication that plaintiff MOSS was injured or was in pain.

By their summary judgment motion, defendants argue they are entitled to qualified immunity as a matter of law because the use of force against plaintiff was not unreasonable under the circumstances. Plaintiff has filed a response to the motion for summary judgment, and

this matter is ripe for determination.

## UNDISPUTED FACTS

Plaintiff's allegations in his original and amended complaints and attached grievances agree with defendants' representations of the following undisputed facts presented by defendants.

1. On January 24, 2008, plaintiff took control of the tray slot of his cell. He alleges this was done in response to being denied a meal by an Officer Rutledge.

2. In response to plaintiff's misconduct, Captain Crawford placed plaintiff on property restriction and authorized a seven man response team to go to plaintiff's cell. A seven man team was assembled instead of a five man team because plaintiff had a cellmate; the other two officers were there to deal with the cellmate. Defendant Sgt. PONDER and Lieutenant Satterfield were in command of this response team. The response team was ordered to strip search plaintiff and his cellmate, remove the two offenders from the cell, remove all of plaintiff's state issued property except his boxer shorts for 24 hours, and remove all of his personal property for 72 hours.

3. When the response team arrived at plaintiff's cell, plaintiff was near the cell door. Plaintiff had his face covered in a towel and a blanket wrapped around him like a robe. Plaintiff had also blocked the ventilation through the pipe chase with a towel. These were all attempts to defeat the use of chemical agents.

4. Plaintiff was informed he was being placed on property restriction and was instructed to comply with a strip search and exit his cell. Plaintiff refused.

5. Defendant Sgt. PONDER advised plaintiff chemical agents would be used if he did not comply and advised him of the consequences of non-compliance. Plaintiff again refused

        multiple orders.

6. The decision was made to attempt to gain plaintiff's compliance by the use of chemical agents. This was done to prevent the use of greater force, that is, the entrance of the seven man team into the cell. Entrance of the seven man team into the cell would be much more dangerous for plaintiff, his cellmate, and for the TDCJ employees on the team.

7. Plaintiff was 5'8" tall and weighed 212 pounds on January 11, 2008; two weeks prior to the incident.

8. Plaintiff's cell had two windows, covered in plexiglass. Ventilation to the cell through the pipe chase was blocked with a towel by plaintiff. Since chemical agents could not be administered through the windows or the pipe chase, only the tray slot remained as an opening through which to administer chemical agents.

9. The tray slot was opened to allow chemical agents to be administered. At that time, plaintiff put out his arm and hand, which were wrapped in a blanket. He hooked his hand around the end of the tray slot and applied pressure with his legs to keep his hand and arm in place. He also placed his face high up against the door to keep it away from any application of chemical agents. Plaintiff's arm, while wrapped in the blanket, covered the entire tray slot. These were clear attempts to defeat the application of chemical agents.

10. Three officers were ordered to move plaintiff's arm to allow the application of chemical agents; defendant BROWN was one of those officers.

11. Plaintiff had his hand hooked around the tray slot and was applying pressure with his legs and body to keep it secure. Because of his actions and his size, it took considerable effort to dislodge plaintiff's hand and allow room to apply chemical agents. During the process,

defendant PONDER issued several orders to plaintiff to remove his arm from the slot, but plaintiff refused to obey. Plaintiff struggled the entire time in an effort to keep control of the tray slot.

12. When defendant BROWN and the other officers were finally able to move plaintiff's hand and arm enough, Officer Ruiz applied chemical agents by spraying plaintiff once in the chest. Plaintiff contends defendant BROWN broke plaintiff's finger during that maneuver to move his hand and arm to allow chemical force. Officers released plaintiff's hand and arm, but plaintiff still refused to comply with orders to relinquish the tray slot and all orders necessary to remove him from his cell.

13. Soon afterward, whether because of an injured finger, a second application of chemical force, or an instruction by Lt. Satterfield to the response team to enter the cell, plaintiff began to comply with orders. Plaintiff then removed his arm and hand from the tray slot, stepped back into the cell and complied with orders. A strip search was conducted, plaintiff was handcuffed, the cell door was opened, leg restraints were applied, and plaintiff was escorted away from the cell so officers could remove his property.

14. Pictures were taken of plaintiff and a nurse attempted to perform a use of force physical. Plaintiff allowed examination but refused treatment. He was then escorted back to the cell and advised of in-cell decontamination procedures.

15. When plaintiff's finger was finally x-rayed on February 20, 2008, the results were negative for any fracture.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996). The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

The Court may make no credibility determinations or weigh any evidence, but is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *See Chaney v. Dreyfus Service Corp.,* 595 F.3d 219, 229 (5th Cir.2010) (citing *Reaves Brokerage Co.,* 336 F.3d at 412-413). Further, Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW UPON A PLEA OF QUALIFIED IMMUNITY

Here, defendants move for summary judgment on their qualified immunity defense.

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, the first prong of the qualified immunity inquiry is to determine whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v.*

*Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

The qualified immunity inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id*. at 555 U.S. 244, 129 S.Ct. 822 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

Judged against these standards, the court finds plaintiff has failed to present evidence sufficient to overcome the affirmative defense of qualified immunity.

### THE LAW AND ANALYSIS

By his summary judgment response, plaintiff argues the assembling of the seven man response team, despite the fact that plaintiff had removed his arm from the food slot during the

initial incident, shows the defendants were acting on their prior threats to break his arm and beat him down. In the face of this evidence, plaintiff says, it is clear the use of force was excessive.

Plaintiff, however, offers no evidence of any sort to support his implicit assumption that defendants PONDER and/or BROWN were responsible for the decision to assemble the response team. Instead, plaintiff, himself, states he was placed on property restriction as a result of his earlier misconduct. The summary judgment evidence shows a Captain Crawford placed plaintiff on property restriction and authorized a seven man response team to go to plaintiff's cell. Plaintiff offers no evidence to rebut this.

Plaintiff clearly disagrees with the property restriction and, given his claimed reason for "jacking the foodslot" may have considered it to be unfair; nevertheless, his opinion did not make that decision or the decision to assemble a response team wrongful and certainly did not justify his resistance to complying with the orders given by the response team. *See, e.g., Meadows v. Gibson*, 855 F.Supp. 223, 225 (W.D.Tenn. 1994)(prisoners cannot pick and choose which prison rules to obey).

Critically, plaintiff's disagreement with being placed on property restriction does not provide any evidentiary support for his claim that the force utilized to effect that property restriction was excessive.

The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), is excluded from the Eighth

Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*.

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the innate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). In examining a claim of excessive force, the core inquiry is not whether a certain level of injury was sustained, but "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Wilkins v. Gaddy,* ___ U.S. ___, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986))). To determine whether the use of force could plausibly have been thought necessary or evinced a wanton infliction of pain, the Court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, and any efforts made to temper the severity of the response by prison officials. An absence of serious injury is relevant to this inquiry, but does not constitute its entirety. *Hudson v. McMillian*, 503 U.S. at 7, 112 S.Ct. at 999.

Plaintiff's complaint is not that he complied with the orders to cooperate with the strip search and removal from his cell and suffered an excessive use of force anyway. Instead, plaintiff's complaint appears to be that he rightfully resisted all efforts to gain his compliance with such orders, necessitating a vigorous use of physical force which he claims injured him. Plaintiff must present evidence that the force used was excessive to the need.

The uncontroverted evidence shows that on January 24, 2008, defendants were members of a seven-person response team tasked with placing plaintiff on property restriction due to his earlier

disciplinary infractions. (*See* Def. MSJ App. at 62, 66). In order to effectuate the assignment, defendants sought to strip search plaintiff and his cell mate, remove them from their cell, remove plaintiff's state-issued property except for his boxer shorts for 24 hours, and confiscate all of his personal property for 72 hours. (*Id.*).

There is no dispute that the sanction of restricting an inmate's access to property is an authorized sanction within the prison.

There is also no dispute that plaintiff engaged in strenuous, sustained, physical resistance to the attempts of the response team to gain his compliance without the use of force or with only the use of minimal force.

There is no dispute plaintiff refused repeated orders to come out of his cell voluntarily and frustrated any attempt to utilize minimal force through application of chemical agents by covering his face in a towel and wrapping a blanket around himself. (*Id.*). Plaintiff also blocked the ventilation through the pipe chase so chemical agents could not be administered through it. (*Id.* at 63, 67). Finally, plaintiff placed his face high against the door and hooked his hand around the end of the cell's food tray slot, applying pressure with his legs to keep his towel-wrapped hand and arm in place in order to block access to the cell through the tray slot. (*Id.*).

Because of plaintiff's stature (5'8" tall and 212 pounds), he was able to control the food tray slot and prevent the officers from applying chemical agents through the slot to subdue him and his cell mate. (*Id.*). Despite Sgt. PONDER's repeated orders that plaintiff remove his arm from the slot, plaintiff refused to obey the orders, and instead struggled with the officers. (*Id.*) Officer BROWN was one of three officers who attempted to move plaintiff's hand from the food tray slot by placing one hand on plaintiff's hand and one hand on his forearm and pushing. (*See* Def. MSJ App. at 67).

Plaintiff contends that during this struggle that plaintiff's finger was injured. (*See* Def. MSJ App. at 63, 67; Plf. Compl. at 4 ¶ 5).

Plaintiff does not explain how any officer, struggling with him while his hand and arm were wrapped in a blanket, could have gauged how much force to apply to effectively remove plaintiff's arm and hand from the foodslot without any injury to plaintiff. Plaintiff does not even argue it was possible to do so without injuring him. Instead, plaintiff seems to feel the any injury to him proves the force was excessive. This is not the case.

Plaintiff's own allegations conclusively prove a reasonable officer in the position of defendant PONDER or defendant BROWN would conclude there was a need for the application of force. Plaintiff has offered proof through two unsworn declarations by plaintiff and his cell mate, attached to his summary judgment response, that Officer BROWN threatened to break his arm if he did not comply with their commands and Sgt. PONDER threatened to "beat his ass." (*See* Plf. MSJ Resp. at Exh. A, B). Nevertheless, defendant PONDER did not "beat [plaintiff's] ass" and, in fact, the moment plaintiff began to comply with the officers' orders by removing himself from the foodslot and stepping back from his door, all force stopped.

Although plaintiff claims that Officer BROWN maliciously and intentionally "bent and twisted [his] pinkie-finger with unreasonable/excessive force just as he intended to do." (*see id.*, attch. at 4), plaintiff has failed to show how BROWN could have done so when plaintiff's hand was completely encapsulated in a blanket. Further, BROWN presented facts which show defendant BROWN was under orders to do exactly as he did and there is nothing in the record showing he acted any differently from the other two officers.

Moreover, although plaintiff claims his finger was broken and dislocated, causing pain (*id.*),

plaintiff has utterly failed to present evidence rebutting defendants' evidence that his finger was not broken. See defendants' Exhibit D-5 to their to their Appendix in Support of Defendants' Motion for Summary Judgment at pg. 78. Page 78 is the record of plaintiff's April 3, 2009 sick call examination by Dr. Patel for complaints of pain in plaintiff's left little finger. Dr. Patel examined the finger and found no swelling, redness or warmth. He found plaintiff had a full range of motion and no neuro-vascular deficits. Dr. Patel noted plaintiff's past history of osteoarthritis in that finger and that a February 20, 2008 X-ray had been read by a radiologist, who reported it was negative. His plan was to treat plaintiff's complaints of pain with Ibuprofen. Plaintiff utterly fails to provide any evidence rebutting this.

In evaluating the effect of the unsworn declarations offered by plaintiff to prove the threats he alleges defendants BROWN and PONDER made, the Court assumes their truth. Nevertheless, those statements alone do not disqualify either defendant from qualified immunity because they do not alter the nature of the inquiry, which is whether a reasonable officer, acting under the same circumstances and with knowledge of the facts known to defendants PONDER and BROWN would have known the force actually utilized was excessive. While less confrontational language could have been used, the mere threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.); *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla. 1977)).

The summary judgment evidence before the Court shows the use of force was not excessive. "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (quoting *Ikerd v.*

*Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that the force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm[.]" *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Henderson v. Kendrick*, No. 7:01-CV-107-R, 2002 WL 1359670 at *1 (N.D. Tex. Jun. 19, 2002) (citing cases) (granting summary judgment on excessive force claim where plaintiff was injured while refusing to release his cell's food tray).

  Here, there is no factual dispute whatsoever that plaintiff was both non-compliant and combative with Officer BROWN. There is no dispute the initial use of force was applied in an effort to restore order and was necessary only because plaintiff refused to submit to the authorized strip search and removal of property and then refused to surrender the food tray slot. Plaintiff was injured in a struggle during which BROWN was attempting to subdue him and enforce a property restriction. Although plaintiff asserts Officer BROWN had malicious intent, he also admits that the force was applied in an effort to maintain discipline – that is, Officer BROWN injured his finger while attempting to gain control of the tray slot. (*See* Plf. Compl. at 4 ¶ V, attch.). A prisoner does not have the right to refuse to comply with orders and then claim that actions taken in response to his refusal were maliciously done. *See Minix v. Blevins,* No. 6:06-CV-306, 2007 WL 1217883 at *25 (E.D. Tex. Apr. 23, 2007) (citing *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir. 1990)). Plaintiff has not produced summary judgment evidence showing the force used against him was objectively unreasonable and clearly excessive to the need. Without such evidence, plaintiff cannot create a genuine issue of material fact for trial.

Plaintiff also seeks recovery from defendant Sgt. PONDER for failing to intervene and prevent Officer BROWN from using excessive force. An officer may be liable under section 1983, under a theory of bystander liability, if he (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act. *Comeaux v. Sutton*, No. H-03-2555, 2011 WL 86554 at *35 (S.D. Tex. Jan. 10, 2011) (citing *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 203-04 (4th Cir. 2002)). Defendant PONDER has averred, in his summary judgment affidavit (Defendants' Appendix at D-2), that, during the struggle over the food slot, his view of the tray slot was obscured by the officers struggling with plaintiff. PONDER could no longer see plaintiff's arm or hand. He also avers that, from what he could see and hear during the struggle, he had no indication that Mr. MOSS' hand or finger was injured and there was no sign plaintiff was in any sort of pain. Plaintiff has failed to point to the presence of any summary judgment evidence in the record or to offer any summary judgment evidence rebutting these Affidavit statements.

Critically, because the record does not show that Officer BROWN or any other officers violated the Eighth Amendment by using excessive force, plaintiff's claims that Sgt. PONDER failed to intervene in the alleged assault lack merit. The defendants are entitled to judgment as a matter of law on the issue of qualified immunity.

## CONCLUSION

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that Defendants' motion for summary judgment [Doc. #63] should be GRANTED. This case should be DISMISSED WITH PREJUDICE.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 12th day of March, 2012.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).